Durling *v.* Hammar.

DURLING and others *vs.* HAMMAR and others.

1. Property purchased by a guardian, with funds belonging to his ward's estate, and the title to which was taken in the guardian's name, will, at the option of the ward, be declared to be held in trust for him.

2. A purchaser of property so held in trust, at a sale under an execution against the trustee, the purchaser having notice of the facts creating the trust, will be decreed to hold it as trustee.

3. A bill praying that complainant's title to one half of the property in question as *cestui que trust*, may be decreed and established, and also that it may be partitioned, and one half set off to her by metes and bounds, is not multifarious.

4. In suits between the proper parties relating to the same subject matter, several species of relief may be prayed, although each might be the subject of a separate suit.

5. Where a bill sets up a sufficient ground of equitable relief as to part, and none as to another part, and would be demurrable if that part was sustained, a general demurrer will not lie.

6. A demurrer being sustained to a part of the bill for a cause specifically assigned, objection on score of multifariousness is removed, and the complainant may proceed as to the rest of his case as if there had been no demurrer.

This cause came before the court on demurrers to the bill by two of the defendants, Martha Jane Hammar and Rittenhouse. The grounds of demurrer were that the bill was multifarious, and that it contained no ground of equitable relief against either. The other defendants did not appear in the suit.

*Mr. A. V. Van Fleet*, for demurrant, Rittenhouse.

The demurrer raises two objections to the bill: 1. Multifariousness; 2. Want of equity.

The objects of the bill are—1. To procure an adjudication settling the title to a farm; 2. For a partition of the farm; 3. That one defendant shall be decreed to refund certain moneys to another defendant; 4. To compel one of the defendants, who has occupied the farm under a deed made in pursuance of the decree of this court, to account for rents.

1. Multifariousness consists in joining in one bill distinct and independent matters, or in demanding several different matters of different natures in one bill, against several defendants, or in demanding several matters distinct and unconnected against the same defendant. 2 *Story's Eq. Pl.*, § 271; *Emans* v. *Emans*, 1 *McCarter* 114; 1 *Daniell's Ch. Pr.*, (1 *Am. ed.*) 383, 391, 393.

A bare statement of the objects of the bill, to a mind familiar with the principles of equity pleading, must be a conclusive argument in support of the objection that it is multifarious. No two of them could be joined in the same suit except the 2d and 4th. A bill for partition and an account has been held good.

The fundamental reason why courts of equity will not entertain a bill which is multifarious is, because such bills do not present a case which can be heard and disposed of by a single hearing and decree, but must be decided by piecemeal.

The first object of this bill concedes the title to this farm is in dispute; that, in truth, is the foundation of the action.

It is a familiar principle of equity jurisprudence, that partition will not be decreed while the title to the land sought to be partitioned is in dispute. *Manners* v. *Manners*, 1 *Green's C. R.* 384; *Obert* v. *Obert*, 1 *Halst. C. R.* 397; *Obert* v. *Obert*, 2 *Stockt.* 98.

Ordinarily, such bills are retained until the title is settled. But the matters to be litigated in this case are so foreign to

T *

CASES IN CHANCERY.

a proceeding for partition, require such different evidence and decrees, that the different inquiries cannot proceed together.

Whether an actual division or a sale shall be ordered, is a. question arising in every partition case. Its solution almost wholly depends, in most cases, upon the number of owners, and the extent of the interest of each. Before that question can be reached in this case, it must be decided whether the defendant, Rittenhouse, is the owner of the whole farm, or only half, and if only half, who owns the other half.

A bill for partition and to set aside a lease made by the complainant for the land sought to be partitioned, was held to be multifarious. *Story's Eq. Pl.*, § 275; *Whaley* v. *Dawson*, 2 *Sch. & Lef.* 367.

The 3d object of the bill—that one defendant shall be compelled to refund certain moneys to another defendant— cannot be made the ground of an action by the complainant, or the foundation of any relief to her. This money was paid by the defendant, Rittenhouse, to the sheriff of Hunterdon, and by him, pursuant to the decree of this court, to Martha Jane Hammar as administratrix, in May, 1866, and must long since have been disbursed in the satisfaction of her intestate's debts, or distributed among the next of kin.

The objects of the bill in *Crane* v. *Fairchild*, 1 *McCarter* 76, were in many respects similar to the bill now under consideration. That bill was held multifarious.

2. Want of equity. The great fact upon which the complainant rests her claim, is that the land in controversy was purchased with her money. Her statement is, that under the authority of the law of Pennsylvania her father was her guardian; as such he sold land belonging to her and her brother in that state, pursuant to law; that her father invested that money in land in this state, taking title in his name; that proceedings were had in this court, by the administratrix of her brother, who died after the purchase of the land here, for the recovery of the amount due him, that she was not made

a party to that suit; that all the land was sold under the order of this court, and that the defendant, Rittenhouse, purchased with full notice that one half of it was held in trust for her.

The power and authority of a guardian are purely local, and he is accountable for the exercise of his power and the performance of his duty, only to the tribunals of the state where the relation of guardian and ward was created. A foreign guardian cannot be recognized in our courts in enforcing the rights of his ward, neither can his ward require him to answer for his conduct as guardian in the tribunals of this state. *Story's Confl. Laws,* §§ 499, 504 a; *Sabin* v. *Gilman,* 1 *New Hamp.* 193; *Morrell* v. *Dickey,* 1 *Johns. C. R.* 153; *Kraft* v. *Wickey,* 4 *Gill. & Johns.* 332, 340, 341; *Armstrong* v. *Lear,* 12 *Wheat.* 169; *Fenwick* v. *Admr's of Sears,* 1 *Cranch.* 259; *Story's Eq. Pl.,* § 59; *Grist* v. *Forehand,* 36 *Miss.* 69; *Griffith* v. *Frazier,* 8 *Cranch.* 22.

Foreign guardians and wards can only appear in our courts simply as creditor and debtor. Now whether this guardian is the debtor of his ward, must entirely depend upon the judgment of the proper court of Pennsylvania. There is no allegation in this bill, that any attempt whatever has been made in the jurisdiction creating the relation of guardian and ward to compel him to account; there is, in fact, no allegation that he has broken a single condition of his bond. Her remedy, primarily, is in the courts of Pennsylvania, and until she shows, by the judgment or decree of the proper court there, that her guardian is indebted to her, and that she has exhausted the means provided by law for her security there, she has no equity which entitles her to a standing in this court.

It appears by the bill, that when the order for the sale of the real estate in Pennsylvania was made, a bond was given by the guardian with sureties. There is no allegation in the bill that these sureties are not abundantly able to perform every condition of that bond. Until it appears that the security provided for the complainant's protection when

the relation of guardian and ward was created has failed, she has no equity which this court can enforce.

If this court takes jurisdiction, the rights and equities of all parties must be regarded. The guardian is legally entitled to expenses, commissions, and under some circumstances, to pay for clothing, maintenance, and education. Can this court make such allowances?

As between the guardian and ward, the decree of this court would be no bar to an action by the ward against the guardian in Pennsylvania. Jurisdiction of the *subject matter* as well as of the person, is essential to the validity of every judgment. *Barnes* v. *Gibbs*, 2 *Vroom* 318; *Peck* v. *Mead*, 2 *Wend.* 471.

The relation of guardian and ward was created by the local law of Pennsylvania. That law governs all the rights, duties, and liabilities growing out of that relation; and any attempt, by the tribunals of this state, to enforce duties growing out of a relation that our tribunals cannot legally recognize, would, upon the plainest principles, be wholly nugatory.

*Mr. G. A. Allen*, for complainants, contra.

THE CHANCELLOR.

The bill alleges that the defendant, Joseph Hammar, who had been appointed by the Orphans Court of the county of Philadelphia, guardian of the property of his two infant children, George W. Hammar and the complainant, Margaret Jane Hammar, now the wife of the other complainant, Andrew J. Durling, in December, 1858, as such guardian, and by virtue of an order of that court, sold the real estate of the two infants, in the city of Philadelphia, for $3225. And that he did in the same month, with that money, purchase a farm in Hunterdon county, in this state, and the farming stock and implements for the farm; that he took the title in his own name, but intended to purchase and hold

the same for his two children, to be conveyed to them when they should become of age; that he, with his children, resided on the farm, and were supported out of it; that his son George, after he became of age, worked on this farm, and took half of the proceeds; that George died in 1865, leaving a widow, the defendant, Martha J. Hammar, and three children, the three infant defendants; that administration of his personal estate was granted to his widow, who as administratrix, in 1865, filed in this court a bill against Joseph Hammar, setting out these facts, and claiming that the land and personal estate might be decreed to be held by Joseph Hammar, in trust for her on his failure to pay to her the part of the proceeds of the sale of the lands of his son George, which belonged to him. That bill, as well as this, alleged that the sureties on the guardian's bond, as well as Joseph Hammar, are insolvent, and that all the parties reside in this state. In that suit an account was taken of the amount due to the administratrix of George for his share of the proceeds of the sale of the Philadelphia property. A decree was made against Joseph for the amount, and upon a *fieri facias* the personal estate and lands bought by Joseph with the money of his children were sold as his property, and the proceeds paid to the administratrix of George. The land was sold under the *fieri facias*, to the defendant, Rittenhouse, and one Hoagland, who both had notice of the facts creating the trust, and after the conveyance by the sheriff to them, Joseph Hammar and his wife (in violation of an injunction in that suit) gave a deed of bargain and sale for this land to Rittenhouse and Hoagland; and subsequently Hoagland conveyed his share to Rittenhouse.

The prayers of the bill are: First. That the deed from Joseph Hammar to Rittenhouse and Hoagland may be declared void as against the complainant for her undivided half, and that the same is held in trust for her. Second. That it may be decreed if the legal title passed by the sheriff's deed, that it did not affect the trust. Third. That there may

be a partition under the direction of this court, or that if deemed more expedient the whole may be sold, and one half the proceeds paid to the complainant. Fourth. And that if more equitable and just, said administratrix should refund to Rittenhouse the purchase money received by her and the other half of the proceeds be paid to said infants, or if no sale be decreed to be held in trust for them. Fifth. That Rittenhouse account to the complainant for her share of the rents, issues, and profits; and Sixth. The general prayer for relief.

If Joseph Hammar purchased this land and personal property with money belonging to his infant children, and in his hands as their guardian or trustee, and more especially if he at the time intended to purchase the same in trust for them, they became entitled to claim the property or the money at their election. Any trustee who purchases property with trust funds in his hands will, at the option of the cestuis que trust, be declared to hold it in trust for them, although title was taken in his own name, and intended for his own benefit. And if Rittenhouse had notice of the facts at the sale, by the sheriff, he is affected by the trust. The complainant is entitled to relief as against him, upon the allegations in the bill.

As to the relief asked for in the fourth prayer of the bill against Mrs. Hammar as administratrix, it clearly cannot be granted in this suit, or in any other brought by this complainant. She has no interest in the refunding to Rittenhouse of the purchase money, or in having their proper share secured to the children of George; and no adjusting of the equities between these parties is necessary for the relief to which the complainant may be entitled.

This demurrer would, therefore, be sustained if it had been confined to so much of the relief sought for against this defendant as is contained in the prayer above distinguished as the fourth prayer. But as Rittenhouse, against whom the relief is sought is a trustee for the complainant, and may be such as to the children of George W. Hammar, and as to

his estate, which is represented by the administratrix; and as under the general prayer for relief, the question may arise, whether the interest of the complainant in the land may not exceed one half, by reason of the proceeds of the personal property, which was part of the same trust, having been paid to the administratrix, she, as well as the infants, are proper parties to the bill, and the residue of the bill cannot be dismissed as against her.

The question of multifariousness is on two grounds. One is, that the complainant prays first that her title to one half of this property as *cestui que trust* may be decreed and established, and also that it may be partitioned, and one half set off to her by metes and bounds. This, if wrong, is not strictly multifariousness, but a misjoinder. It does not involve in litigation on a question in which he has no interest, a party who has an interest in a distinct question or litigation in the same bill. Rittenhouse is interested in both questions—first, whether he holds, as trustee for the complainant, and to what extent; and secondly, whether the share of the complainant should be set off to her by metes and bounds; and the other defendants so far as they are interested, are in the same manner interested in both questions.

The real question is, can both these matters be joined in one suit as against the same defendant. It is my opinion that they may. The subject matter is the same, one parcel of lands. The complainant claims that she is entitled to have one half of the parcel conveyed to her as *cestui que trust*, and asks that in the conveyance instead of one equal undivided half, one partitioned half by metes and bounds shall be conveyed. In suits between the proper parties relating to the same subject matter, several species of relief may be prayed, although each might be the subject of a separate suit, as that one mortgage may be redeemed and another declared void for usury. Many of the complicated decrees, constantly made in this court, demonstrate this to be the practice in equity.

Another ground of multifariousness is, that relief is

sought against Martha J. Hammar, in which Rittenhouse is not concerned. This would sustain the demurrer for multifariousness, if the complainant showed a case in which she was entitled to the relief so asked against Martha J. Hammar, or if that part of the bill was sustained. Chancellor Walworth, in *Varick* v. *Smith*, 5 *Paige* 160, says: "A bill is not multifarious where it sets up one sufficient ground for equitable relief, and sets up another claim which, upon its face, contains no equity which can entitle the complainant to the interposition of the court, either for discovery or relief."

And in *Emans* v. *Emans*, 1 *McCarter* 114, Chancellor Green says: "The demurrer being sustained as to part of the bill, the objection on the score of multifariousness is removed. The rest of the bill not covered by that ground of demurrer remains in court, and the complainant as to that part of his case may proceed as if there had been no demurrer."

As the demurrer in this case is to the whole bill, and not to the part only on which there can be no relief, it is too broad and must be overruled. *Banta* v. *Moore*, 2 *McCarter* 97; *Story's Eq. Pl.*, § 443.